**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Submitted October 22, 2024*
Decided October 23, 2024

***Before***

MICHAEL B. BRENNAN, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 23-2983

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v.*

VICENTE GARCIA,
*Defendant-Appellant*.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.

No. 08-cr-746-2

Mary M. Rowland,
*Judge*.

## O R D E R

Vicente Garcia, a former high-ranking member of the Latin Kings street gang, appeals the denial of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). The district court denied Garcia's motion, concluding that Garcia had asked for changes

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

to his sentencing guidelines calculations that would not ultimately lower his sentencing range. Because the court did not abuse its discretion in denying the motion, we affirm.

As a "Supreme Regional Inca" of the Latin Kings, Garcia oversaw the gang's operations in Chicago's Little Village neighborhood. In 2009, Garcia was charged alongside several fellow gang members with nine counts of offenses related to firearms, drugs, extortion, racketeering, and racketeering conspiracy. *See* 18 U.S.C. §§ 924(c), 1951, 1959(a)(3), 1962(d); 21 U.S.C. § 841(a)(1). He proceeded to trial in 2011, and a jury found him guilty on all counts.

Garcia's presentence report calculated a guidelines range of life, based on a total offense level of 43 and criminal history category of III. The offense level calculations are complicated and warrant some discussion.

To ascertain Garcia's offense level for his racketeering conspiracy, the presentence report ("PSR") used 12 predicate acts that ranged from cocaine distribution to murder. For each predicate act, the PSR then calculated adjusted offense levels—murder held the highest offense level of 47, and three separate acts of attempted murder carried offense levels of 40, 39, and 39, respectively. The PSR determined the combined offense level for the racketeering conspiracy "by taking the offense level applicable to the Group with the highest offense level"—47, for murder—"and increasing that offense level by" additional levels based on the number of acts that were equally or similarly serious to the highest offense level. U.S.S.G. § 3D1.4. Because the three acts of attempted murder were "5 to 8 levels less serious" than murder, the PSR increased the total offense level by three. *Id.* § 3D1.4(b). This yielded a combined adjusted offense level of 50 for racketeering conspiracy. (The remaining predicate acts, which were "9 or more levels less serious" than murder, did not add to the total offense level. *Id.* § 3D1.4(c).)

The PSR also determined that two of Garcia's other offenses—crack-cocaine distribution—took place beyond the conspiracy's ambit and needed to be calculated separately from his racketeering conspiracy. The PSR computed an adjusted offense level of 28 for Garcia's crack-cocaine offenses. But the PSR then grouped the crack-cocaine and racketeering-conspiracy offenses because they "involve[d] the same victim, society, and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." *See* U.S.S.G. § 3D1.2(b). Because the offense level applicable to a "case of counts grouped together" under § 3D1.2(b) is "the highest offense level of the counts," *id.* § 3D1.3(a), the total combined

offense level for the racketeering conspiracy and the two crack-cocaine offenses was 50. And, because "an offense level of more than 43 is to be treated as an offense level of 43," *id.* § 5A App. Note 2, the PSR adjusted the final total offense level to 43.

The court adopted the PSR's guidelines calculation and sentenced Garcia to 360 months' imprisonment for distribution of crack cocaine; 240 months' imprisonment for racketeering conspiracy, assault with a deadly weapon, conspiracy to commit extortion, and distribution of cocaine; and 60 months' imprisonment for distribution of cocaine and crack cocaine, all to run concurrently. The court also sentenced Garcia to 120 months' imprisonment for using and carrying a firearm in connection with a crime of violence, to run consecutively to the other counts. We affirmed his conviction and sentence. *See United States v. Garcia*, 754 F.3d 460, 488 (7th Cir. 2014).

In 2022, Garcia moved for a sentence reduction under § 3582(c)(2). Garcia argued that Amendment 782—which lowers the base offense levels for most drug-related offenses by two levels—retroactively applied to his drug offenses, including his offenses for distribution of crack cocaine. He urged that his sentence be reduced because his crack-cocaine offenses should not have been grouped with his racketeering acts.

The district court denied Garcia's motion. The court explained that § 3852(c)(2) did not authorize a direct challenge to the grouping decisions in his original sentence; such a challenge needed to be made on direct appeal or in collateral proceedings under § 2255. *See United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023). Further, the court noted that lowering the base offense levels of Garcia's drug offenses under Amendment 782 would not have decreased his sentencing range under the Guidelines, because his drug offenses remain grouped with his racketeering offenses.

On appeal, Garcia asserts that the district court wrongly concluded that he could not rely on § 3582(c)(2) to challenge the grouping of his crack-cocaine offenses with his racketeering acts. He contends that his 360-month sentence for crack-cocaine distribution would be lowered under Amendment 782 if the court had properly uncoupled his crack-cocaine offenses from his racketeering offenses.

Section 3582(c)(2), however, "authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon v. United States*, 560 U.S. 817, 826 (2010). A district court may grant a reduction under § 3582(c)(2) when a sentencing range has subsequently been lowered by a retroactively applicable amendment that would reduce the defendant's guideline range. *See Hughes v.*

*United States*, 584 U.S. 675, 681 (2018). When determining a defendant's eligibility for a reduction under § 3582(c)(2), the court must apply the amendment to the defendant's guidelines range and "'leave all other guideline application decisions unaffected.'" *United States v. Koglin*, 822 F.3d 984, 986 (quoting U.S.S.G. § 1B1.10(b)(1)). Given the narrow scope of § 3582(c)(2), the district court may not review substantive aspects of Garcia's sentence, including grouping decisions.

The district court, leaving the grouping determinations untouched, correctly concluded that Amendment 782 does not render Garcia eligible for a sentence reduction. Even if Amendment 782 were applied and Garcia's drug offenses each reduced by two levels, his sentencing range would remain unaffected because the drug offenses still would be grouped with his racketeering conspiracy—totaling an adjusted offense level of 50. *See* U.S.S.G. § 3D1.3(a).

AFFIRMED